Filed 6/26/15  P. v. Messing CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B256855 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. MA058520) |
| BRIAN MESSING, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Naranjo, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Brian Messing, Jr. was convicted of possession of methamphetamine for sale. On appeal, he contends the trial court committed evidentiary and sentencing errors. We disagree and affirm the judgment.

## FACTS

On October 25, 2012, Los Angeles County Sheriff's Deputies Ed Arnone and Ryan Diez were patrolling in Palmdale when they noticed a car fail to signal a left turn and the driver did not wear a seatbelt. Messing was the driver of the vehicle. He accelerated when he noticed the deputies make a U-turn to follow him. He made another left turn "at a fairly high rate of speed" on to Avenue Q-12 and the deputies lost sight of him for about five seconds. When the deputies activated their lights, however, Messing pulled over.

While conducting the traffic stop, the deputies were contacted by their dispatcher, who advised them a witness saw Messing throw an object out the passenger window as he drove down Avenue Q-12. Deputy Arnone contacted the witness, Ana Veronica Contreras, the manager of an apartment complex on Avenue Q-12. She called 911 to report that something was thrown from a car while it was pursued by the police.[1] During her call, she stated she saw the police pursue the car, saw something thrown from the car, and saw the police stop the car. However, she clarified at trial that she did not personally observe any of these events, but merely reported what her tenants had told her they saw. Contreras directed the deputies to two baggies on a walkway in front of a nearby church. Deputy Diez estimated the baggies each contained an "eight ball" of methamphetamine, weighing about 3.5 grams.

A subsequent search of the car revealed over $1,000 in cash, mostly in $20 bills, and a cell phone, but no narcotics or drug paraphernalia. The deputies were able to unlock Messing's cell phone using the house number of his address. On the cellphone was a text message dated that day which read, "Can I get an eight ball for a buck 20."

---

[1] At trial, there was evidence showing a discrepancy between the time the deputies indicated the traffic stop occurred—at 2:00 p.m.—and the time Contreras called 911—at 1:28 p.m. This discrepancy was pointed out to the jury in closing by defense counsel.

Deputy Diez interpreted the message to mean someone wanted to buy an eighth of an ounce of methamphetamine, approximately equal to 3.5 grams, for $120.

Messing was charged with one count of possession for sale of a controlled substance in violation of Health and Safety Code, section 11378.  It was further alleged he suffered a prior strike pursuant to Penal Code sections 1170.12, subdivisions (a)-(d) and 667, subdivisions (b)-(i), served two prior prison terms pursuant to Penal Code section 667.5, subdivision (b), and suffered a prior conviction pursuant to Health and Safety Code section 11370.2, subdivision (a).  After trial, the jury found Messing guilty as charged and he admitted the prior convictions.  The trial court sentenced him to the upper term of three years, which was doubled to six years pursuant to the Three Strikes Law, plus one year each for the two prior prison terms and three years for the prior controlled substances convictions.  The trial court further imposed various fines and fees under the Penal Code.  Messing timely appealed.

DISCUSSION

## I.  Admission of Prior Arrest

### A.  Procedural Background

On June 18, 2010, Sheriff's deputies conducted a traffic stop of Messing in Palmdale and found two baggies of methamphetamine inside the car, one of them hidden inside the air vent of the car.  One of the deputies observed Messing put something in the vent area. The deputies also found a digital scale, text messages consistent with narcotic sales, and $110 in cash.  Messing pled no contest to possession for sale of a controlled substance and was sentenced to two years in state prison.

The People sought to admit evidence of the 2010 incident under Evidence Code section 1101 as highly probative to establish Messing's intent in this matter.  The People argued that in both instances, Messing possessed similar quantities of methamphetamine packaged in plastic baggies inside his car, his phone contained text messages indicating he had potential buyers, and Messing claimed not to be employed.  Defense counsel disagreed, contending the circumstances were not similar to the 2010 incident.  He argued there was no evidence Messing possessed drugs in this case as none were found

3

on his person or in his car. Further, no eyewitnesses were willing to testify he threw narcotics out of his car as he was being pursued by the police. Instead, the prosecution merely presented hearsay testimony from Contreras about what she was told by her tenants. There was also no indication the phone found by the deputies belonged to Messing. Finally, Messing was employed. As a result, these factual differences rendered admission of the prior offense more prejudicial than probative. The trial court allowed the evidence of the prior offense to be admitted under Evidence Code section 1101, subdivision (b), finding it was relevant to issues of intent, knowledge, lack of mistake, and knowledge of the controlled substance. The trial court further indicated it would not change its decision even if Messing produced evidence he was employed.

During trial, the prosecutor indicated he received photographs of the text messages taken from Messing's cell phone in 2010, but they were unreadable. As a result, he sought to introduce secondary evidence of those writings in the form of testimony from the deputy who saw them in 2010 under Evidence Code section 1521.[2] The prosecutor acknowledged the deputy would testify the text messages related to methamphetamine transactions, but that he lacked a verbatim recollection of the text messages. The trial court admitted the deputy's testimony to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, noting that "except for the dates[,] they're basically the same crime."

As a result, Deputies Wyatt Waldron and Giovanni Lampignano testified to the circumstances surrounding the 2010 incident. A criminalist with the Sheriff's Department also testified he tested the powder inside the baggies found in Messing's car in 2010 and concluded it was methamphetamine.

Deputy Diez opined that the methamphetamine found in this case was possessed for sale. He based his decision on the text message asking for an eight ball, the amount of cash found on Messing, the fact that Messing did not appear to be under the influence of a narcotic, and that there was no drug paraphernalia in the car for ingestion. When

---

[2]   Evidence Code section 1521 permits the content of a writing to be proven by otherwise admissible secondary evidence under certain circumstances.

asked by the prosecutor whether he had reviewed police reports involving a 2010 incident, Diez said he did and that it showed Messing had a history of possessing methamphetamine for sale. However, he confirmed his opinion would remain unchanged even without the 2010 incident. The trial court overruled defense counsel's objections to Deputy Diez's testimony about the 2010 incident, finding Diez could rely on hearsay to form an expert opinion. The trial court noted other evidence of the 2010 incident would be admitted in any event.

At the conclusion of trial, the jury was instructed that Deputy Diez's testimony about the police report of the 2010 incident "was allowed only for consideration as a factor in forming his expert opinion." Further, the record of the prior conviction was "allowed in only for the purpose of showing the commission of the prior offense." The jury was also instructed it could only consider the evidence of the prior incident for the limited purpose of deciding whether Messing had the intent to sell, the knowledge of the presence and nature of the narcotic, any lack of mistake or accident, and a plan or scheme to commit the offense alleged.

### B. Analysis

Messing contends the trial court prejudicially erred when it admitted evidence of the 2010 incident, including the testimony of the 2010 text messages' contents. According to Messing, the evidence was insufficiently similar to the present case, cumulative, and more prejudicial than probative. In addition, the statutory requirements to admit testimony about the 2010 text messages were not met.

Under Evidence Code section 1101, "[e]vidence of other crimes is not admissible merely to show criminal propensity, but it may be admitted if relevant to show a material fact such as intent. [Citations.] To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented. The least degree of similarity is needed when . . . the evidence is offered to prove intent." (*People v. Jones* (2011) 51 Cal.4th 346, 371 (*Jones*).) "[T]he recurrence of a similar result tends to negate an innocent mental state and tends to establish the presence of the normal criminal

5

intent." (*Ibid*.) Nevertheless, evidence of uncharged crimes, is admissible under Evidence Code section 1101, may still be inadmissible under Evidence Code section 352. Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Thus, the People have the burden of establishing the evidence has substantial probative value that clearly outweighs its inherently prejudicial effect. (*People v. Soper* (2009) 45 Cal.4th 759, 772.) The determination whether to admit other crimes evidence lies within the trial court's discretion. (*Jones, supra*, at p. 371.)

The 2010 crime was clearly probative of Messing's intent, plan, and absence of mistake in possessing methamphetamine for sale. Where "'a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and . . . such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.) Here, the similarities between the 2010 crime and the charged crime are substantial. Both involved the possession of methamphetamine in amounts suitable for sale. Messing was driving in Palmdale with the methamphetamine in his car in both cases. He attempted to hide or dispose of the narcotics when he realized the police were following him. He was carrying cash. Messing also possessed a cell phone in each incident containing text messages relating to the sale of methamphetamine. Moreover, there was evidence that Messing was not otherwise legitimately employed either in 2010 or 2012. Messings' attempt to distinguish the two incidents is unavailing, particularly his attempt to reweigh Contreras' inconsistent statements regarding whether she personally observed Messing throwing an object from the car. The evidence showing similarities between the two incidents exceed the "least degree of similarity" needed to prove intent. (*Jones, supra,* 51 Cal.4th at p. 371.)

6

Moreover, the probative value of this evidence was not substantially outweighed by the possibility of undue prejudice to Messing. It is unlikely the jury would seek to punish Messing for the prior incident. The trial court expressly instructed the jury as to the limited purposes for which it could consider the evidence of the 2010 incident. We presume the jury understood and followed these instructions. (*People v. Avila* (2006) 38 Cal.4th 491, 575.)

Neither are we persuaded that the testimony regarding the 2010 text messages should have been excluded because the requirements of Evidence Code section 1523 had not been met. Evidence Code section 1523, subdivision (b) provides, "Oral testimony of the content of a writing is not made inadmissible by subdivision (a) if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence." There is no dispute that the copies obtained by the prosecutor of the photographs of the 2010 text messages were unreadable. The record shows the prosecutor and the trial court attempted to locate legible copies of the text messages with no success. The trial court asked its clerk to obtain the court file on the prior case, but it was "bare bones" and did not contain a copy of the text messages. Moreover, Deputy Wyatt Waldron testified he called the archives for Palmdale Station to pull "what was scanned from the original, but the one that was scanned in wasn't able to be seen for the most part." The prosecutor's search for legible copies was also unsuccessful.

The various searches conducted by the trial court, the prosecutor, and the deputy are sufficient to satisfy the requirements under Evidence Code section 1523. Messing fails to suggest what other searches the prosecutor or the trial court could have conducted to fulfill their duties under Evidence Code section 1523. "Questions whether the search was sufficient in scope and was conducted in good faith are addressed to the discretion of the trial court, and will not be disturbed on appeal absent abuse of discretion." (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1069.)

**II.    Sentencing Issue**

On appeal, Messing contends the trial court failed to state a reason for imposing the upper term, committed dual use error, and abused its discretion in sentencing him to the upper term.  We disagree.

At sentencing, the prosecution requested the high term to be imposed, noting Messing received the mid-term in 2010, with a prior strike stricken.  Defense counsel argued the relatively small amount of narcotics possessed by Messing warranted imposing the low term.  Both counsel stipulated that the probation officer's report could be used in sentencing.  The court stated that only "two years, four months after the [2010] conviction [passed], and he's allegedly being stopped again for very similar type circumstances with another possession of methamphetamine.  The trial court sentenced Messing to the upper term of three years, relying on the probation report which recommended denial of probation, and "based upon everything [it] heard, looking at the reports, hearing the evidence, hearing the  motions[.]"

The Attorney General contends Messing forfeited the argument by failing to object at sentencing.  (*People v. Scott* (1994) 9 Cal.4th 331, 355.)  We agree.  "'[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.'"  (*People v. Boyce* (2014) 59 Cal.4th 672, 730 (*Boyce*), quoting *People v. Scott, supra,* 9 Cal.4th at p. 356; accord, *People v. McCullough* (2013) 56 Cal.4th 589, 594-595.)  "'[C]laims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' are subject to forfeiture, including 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or to give a sufficient number of valid reasons.'"  (*Boyce*, *supra*, at p. 731.)

Even so, we find no error.  The reasons for imposing a sentence must be stated on the record.  (Cal. Rules of Court, Rule 4.420, subd (e).)  A sentencing court "may not impose an upper term by using the fact of any enhancement upon which sentence is

imposed under any provision of law." (Pen. Code, § 1170, subd. (b).) Thus, a fact charged and found as an enhancement may be used to impose the upper term only if the sentencing court has and exercises its discretion to strike the punishment for the enhancement. (Cal. Rules of Court, Rule 4.420(c).)

Trial courts no longer *find facts* in support of their sentencing decisions. Instead, to comport with constitutional principles embodied by the Sixth Amendment, the Legislature amended California's Determinate Sentencing Law to give judges discretion to choose the appropriate sentence based on a *statement of reasons* justifying the sentence. (Pen. Code, § 1170, subd. (b).) Further, "[i]t is not clear whether the reasons stated by the judge for selecting a particular term qualify as 'facts' for the purposes of the rule prohibition on dual use of facts." (Cal. Rules of Court, rule 4.420, Advisory Committee Comment.) Thus, the prohibition on "dual use of facts" may no longer be viable. But even if it is, there is nothing in the record to indicate the trial court improperly relied on the fact of an enhancement in this case to impose the upper term. The trial court's statement that Messing had been convicted of a similar crime a short while earlier was but one of the facts stated, and can be properly considered as showing he has numerous convictions (Cal. Rules of Court, rule 4.421, subd. (b)(2)), and the temporal proximity of the prior crime demonstrates he has not changed his ways. (Cal. Rules of Court, rule 4.408.) Given this, Messing's ineffective assistance of counsel argument lacks support.

## DISPOSITION

The judgment is affirmed.


BIGELOW, P. J.

We concur:


RUBIN, J.                    GRIMES, J.

9